And we'll turn to the next case on our docket, which is U.S. v. Cox. May I begin, Your Honor? Yes. Good afternoon, Your Honor, and may it please the Court. My name is Anne Wagner, and I'm here on behalf of Francis Schaefer Cox. I'd like to reserve three minutes for rebuttal, if possible. I'd like to focus today on the due process new trial argument, but I'm hoping to touch on the ineffective assistance claims as well. For both of these sets of claims, a brief review of the facts may be helpful. The government prosecuted Mr. Cox based on three separate theories or agreements. First, the self-defense plan against fictitious federal assassins at the KJNP television station. Second, a database of state officials that Cox and Anderson created in order to identify and oppose any government officials who were carrying out Stalin-esque mass arrests and purges. And third, the so-called 2-4-1 discussions that the government never argued were part of an agreement. Today, we're really talking about two of these theories. The 2-4-1 theory is out because the government never argued it, and the district court below recognized that the third theory didn't affect the murder conspiracy conviction. So out of the two theories, we've got KJNP assassins and we've got the database. The KJNP assassins theory is also out because of the first appeal, and I'm happy to talk about the impact of the first appeal if anyone has questions. Only one theory is left, which is the database. I don't have a question, but I should have advised at the start this case is set for 15 minutes per side. And unfortunately, I can't see the clock. It was set for 15. What? There are 13 minutes remaining. Okay, could you just alert us or one of my colleagues? Yes, I'll alert you. When we get down. I will. When we get to time. Okay, please proceed. Thank you. So the database theory is left. Unfortunately, no one emphasized that theory at trial, and it is incredibly unlikely that the jury unanimously agreed to convict Mr. Cox based on that theory alone. The Yates case, or really both Yates cases, including the one I just submitted in a 28-J letter on Monday, provide a solution here. Mr. Cox must be retried on the conspiracy count to ensure that the jury convicts him on the only valid theory. Let's just talk for a moment about the evidence supporting the database theory. So first we have evidence that your client worked with a co-conspirator to identify the state and federal officials that he wanted to kill. If the government should declare martial law, he gave the co-conspirator the names of those officials to add to the database, told his co-conspirator that one of the officials was nice, but one day she might have to go, and amassed various guns, grenades, et cetera. So why is that not enough? The agreement was not to kill in case of martial law. The agreement was to create a list of people that may or may not participate in unconstitutional mass arrests and purges of various groups, as in Stalin's Russia. So they had a list. They didn't intend to necessarily kill anyone on that list unless they were participating in these unconstitutional acts, which were incredibly unlikely to happen in the United States. So the nice person that Mr. Cox asked Mr. Anderson to put on the list, first of all, Mr. Anderson testified that he didn't believe Cox had agreed to murder that person. She was his friend. She had been to his house, or he had been to her house, pardon me, and they were very friendly. And so he wasn't planning on killing her unless, for some reason, she was participating in these mass arrests and purges that were not happening. So I absolutely disagree with the government's characterization that anyone agreed to kill the people in the database. And moreover, the federal employees weren't in the database. The federal employees, so that includes the friend, were three names that Cox asked Anderson to add to the database. But he did not add them. He did no research on them. And there's evidence that they didn't agree to murder them because Anderson testified at trial that he didn't think Cox had agreed to murder them. So absolutely, the database theory was disputable and would be vigorously disputed in any retrial. Well, on one of them, he said something to the effect, you know, she's nice, but, you know, one day she may have to go. This is the same person. That's the same person, right? This is his friend. This is his actual friend that he had been to her house for dinner. That's a real person? Multiple times, yes, real person. Not a fake assassinee or whatever one might be called. Right. You know, Mr. Cox was talking loosely, and there's a lot of loose talk in all of these documents. But the agreement between the two people was that this list was not to be used unless any of these people were carrying out mass arrests and purges. So one day she might have to go is if she's ordered by the government to, you know, be a member of Stalin's, like, mass arrest brigade and start rounding people up. So he didn't want to murder her. I mean, he didn't think he was going to have to murder her. The resentencing, Anderson testified that they thought this might happen in 20 years if ever. I mean, maybe never. So, you know, he was speaking loosely there. You know, different inferences could be drawn from that, but absolutely it would be vigorously disputed in any retrial. But the question here is whether Mr. Cox, whether the error was harmless beyond a reasonable doubt. And it was absolutely not harmless beyond a reasonable doubt. Because the closing arguments all focused on the one victim set that were actually federal in character, which were these fake FBI agents that didn't exist. And so everybody was arguing about supposedly federal employees that do not count under FIOLA as federal victims for the purpose of this statute. So absolutely the entire closing arguments would look completely different if they were talking about the database. And a new trial is necessary to ensure that the jurors were looking at that theory. This court should also reverse the district court's denial of ineffective assistance claims, or at least remand for an evidentiary hearing. It is patently ineffective assistance to ignore a central element of an offense, an element that was pivotal to the reversal on plain error of another one of the convictions on direct appeal. It mattered whether Cox and Anderson put federal officials or just state officials in the database. It mattered whether the admittedly fictitious federal assassin team qualified as federal employees for the purpose of that element. And it turns out they didn't. Let's assume that it does matter. You've got these different categories, some fake, some real. Does your ineffective assistance argument fall if the database harmless error is accepted on the first ground that we were talking about? The Strickland prejudice analysis is a reasonable probability of a different result. So harmless beyond a reasonable doubt, reasonable probability, they're similar. But absolutely the evidence in both of these claims would look completely different if everybody had actually been thinking about the database. If you read the closing arguments, nobody was. I hear your argument, but I just want to kind of get back to the heart of my question. Maybe I wasn't precise enough. Because your argument in our first round of questioning is, well, the database really wasn't on the table, so to speak. It wasn't the big argument. My question is how that is actually linked to the ineffective assistance of counsel. So if we were not to accept your argument that database under Yates would rise to the appropriate standard, does that also doom your ineffective assistance of counsel argument? I don't think it does. Because ineffective assistance claims really do take into account how the evidence would look completely different in a retrial. We do have a cumulative IAC claim here as well. So we're asking the Croft instruction that would have instructed the jurors that they had to conspire with premeditation and malice aforethought for those federal employees that were supposedly being added to the database but never were. The jury was never asked to consider that, and that might well have made a difference as well. The unanimity question. If some of these jurors were only convinced by the federal employees that were fictitious, and some of them were only convinced by the federal names that were never added to the database, then that's not real unanimity, because some of those don't fulfill the element. So in a cumulative IAC claim, we're thinking about all those things. And absolutely, there's a reasonable probability of a different result. If some of the jurors were thinking that the federal employees counted only because they were in the KJMP theory. So reasonable probability of a different result includes a hung jury. So we're really talking about one juror being persuaded by this evidence. I'm persuaded. I'm a reasonable person. I would not have voted to convict him. And I think that you could find a reasonable juror who would reach that different understanding of what the database was for. And that's absolutely a reasonable probability of a different result. If I could address the government's arguments about the prior appeal just for a moment. There are two cases that are cited in that unpublished opinion. One is FIOLA, and the other is United States v. Stewart. Now, the only possible reading of FIOLA is that it is a conspiracy case, and it is about the federal official element. The portion cited by the court is about how to identify whether the federal official element is met in an uncompleted conspiracy, as here. Nobody was killed, right? So the FIOLA case really has to be seen as taking out the KJNP theory for both the conspiracy conviction and the solicitation. The panel was actually stretching to make this fit solicitation, but it was absolutely on point for the conspiracy. And then second, the Stewart case was cited in the briefs as being purely about self-defense. All of the briefing in the opening brief, if you look at that in the ERs, was about citing Stewart for the purpose of the self-defense argument. Self-defense applies to conspiracy as much as it does to the solicitation count. So it's necessary that you look only at the database to determine harmlessness in the trial theory under Gates. I have about three minutes left, so I'll reserve the rest of my time. Yeah, just a little over three minutes for rebuttal. Thank you. Thank you. I'll hear from the government next. Thank you, Your Honor. May it please the Court, Stephen Corso here of the United States. Today we're in front of the Court to ask the Court to affirm Mr. Cox's guilty verdict in the murder conspiracy for a third time. This is the third trip to the Ninth Circuit for Mr. Cox. In his trial, the government presented one murder conspiracy that alleged one object. That object was to kill federal officers engaged in their official duties or on account of those official duties. That was a valid theory. The theory embraced federal offenses, that being federal conspiracy offense and the offense of killing a federal officer. The jurisdiction, therefore, was absolutely properly before a federal court. In that indictment and in its trial presentation, the government proved numerous overt acts. The indictment alleged 25 overt acts, and the judge read 22 of those 25 overt acts to the jury when it charged the jury at the end of the trial. Those overt acts, including the hit list database, importantly, Mr. Cox and his co-conspirators sought that database prior to his arrest, while espousing notions of setting booby traps for federal officers who might approach the residence he was staying in to arrest him. He had intentionally skipped court, provoking a warrant for his arrest and seemed to yearn for or itch for or encourage an armed and violent confrontation with law enforcement, which would absolutely include federal law enforcement. In this period of talking about setting booby traps and killing butt loads of officers, Mr. Cox and his co-conspirators repeatedly sought the database. Mr. Cox had met with Mr. Anderson about a year prior and instructed Mr. Anderson to add several names to the database that included the names of three federal officers. In this meeting, they talked about identifying other federal officers to add to the database. They sketched the courthouse or federal building in Fairbanks, and on a separate piece of paper later recovered from Mr. Anderson, he had a notebook with the indentation Federal Hit List, and on that hit list was the name of Jimmy Johnson, a U.S. Marshal. So Mr. Anderson had followed Mr. Cox's directions, had sought information on federal marshals, and wrote down the name of a federal marshal on a piece of paper that was recovered when Mr. Anderson was arrested. The database hit list goes far beyond any discussion between Mr. Cox and Mr. Anderson. It became an overall part of the conspiracy and a real danger and a real threat to federal officers because of the intent behind it. Well, your opposing counsel suggests that that may be true in theory, but the reality of the trial was that the database was not the focus. We disagree with that, Your Honor. And what do you think is your best evidence? You know, we have to go back to the first direct appeal, I guess, and you first have to say, well, do you read the panel support of the conviction on the conspiracy to be on the database or on the KJ&P theory? No, we don't read the decision to be based on the database at all. We read it to be a broad-based decision. But if it was the KJ&P, how would you have federal jurisdiction? Isn't there a parallelism between that and the solicitation? We think they're separate. We think the murder conspiracy and the solicitation are separate offenses. They have separate elements, and the panel in the first appeal treated them separately. They held that the KJ&P evidence was insufficient to support the solicitation count, but they absolutely did not make the same holding in the murder conspiracy count. They didn't make the holding, right? Pardon me? They didn't actually make the holding. Well, they held that the murder conspiracy was sufficiently proved. Could go forward. They did not hold that the KJ&P evidence was not to be before the jury. They did not decide that KJ&P was invalid in the murder conspiracy. So the holding in the solicitation was very limited to the KJ&P evidence in the solicitation context. It did not cross over into the murder conspiracy context. The closing argument did not focus merely on the KJ&P evidence. It was a long argument. This was a long trial. It was a six-week trial. There were hundreds of exhibits, dozens of witnesses called, and the government argued all of the overt acts in support of the conviction at trial. It did not, by any stretch or any means, focus on KJ&P exclusively or encourage the jury to focus only on KJ&P or encourage the jury to ignore other evidence and only focus on KJ&P. The argument was broad-based and very much included the database hit list evidence, and for good reason. Those names on the hit list to be included in the database were named federal officers that Mr. Cox had confronted in public, had harangued and harassed and intimidated. And once he did that, he went to Mr. Anderson and asked that they be added to his hit list. And when he provoked a warrant for his arrest, he sought that hit list with those four federal names. So unambiguously, that is probably the best evidence that the government could cite to to support both the conviction for the murder conspiracy and the solicitation count. And this notion that the government only relied on KJ&P is a false notion. It's a premise of the defense's argument here, but it's just not accurate and it's just not fair. And so I encourage the court to review all the evidence, review the closing arguments, and you'll see very clearly that KJ&P was only a minor piece of evidence, but also an important piece of evidence because the KJ&P evidence, as an overt act, demonstrated what this conspiracy to kill federal officers was all about. It reflected that there were actors in the conspiracy, the associations amongst those actors, and a willingness of the actors to organize themselves, plan an operation, and then deploy out in public to carry out an operation. In this instance, it was an operation to secure Mr. Cox when he appeared for an interview at a TV station. But it demonstrated their willingness to go out in public under certain conditions, go out in an organized and planned fashion, and go out heavily armed with military-style weaponry. And it just does not matter that the Hit List did not exist. Their willingness to do things like this demonstrated and proved their intention to murder federal officers. In addition to that, they talked about the two-for-one plan, the notion of killing two law enforcement officers for every one that the government killed, or arrest two law enforcement officers for every one that the government arrested. Intertwined with these threats to federal officers, there were numerous threats to state officers, such as surrounding a state trooper, telling the trooper that they had them outgunned and outmanned, talking about kicking in state court judges' doors, putting a bullet in the head of the state court judge that presided over Mr. Cox's state trial, dangling state court employees like wind chimes, and telling a judge that he appeared in front of, that people in the community preferred to enter her home at night and kill her at home while she slept, rather than appear in her courtroom. This somewhat goes to the ineffective assistance of counsel argument.  You have fake people, you have state people, and you have federal people. And the counsel really didn't differentiate between and among those. Why wasn't that air? And if it was air, what would be the prejudice? We don't think it was air. We think it was just a classic decision on defense counsel that defense lawyers make every day in courtrooms across the country, which is how to defend their clients. It takes a lot of different factors into play. In here, Mr. Cox's defense was not that he only targeted state officials and left federal officials alone. Far from it. He had as much animosity toward federal officials as he did to state officials. His defense, therefore, was not, well, we only intended to harass and murder state officials. We were going to distinguish or leave all the federal officials alone. That was not his defense at all. And, of course, that would be an absurd defense and not one that had any credibility in front of the jury. Not one worth wasting credibility in front of the jury and judge on the part of defense counsel. Instead, Mr. Cox's defense was one of lack of intent, misunderstanding, the claim that all these violent words and violent actions and violent rhetoric were just misconstrued, that nobody was harmed. Under the FIOLA test, of course, the test is whether the agreement to kill a federal officer, even if that agreement is not fulfilled, is dangerous in and of itself, aside from any actions that they later conducted. So those are many reasons why the decision of counsel to not dwell on the threats to state officers was not air. Not ineffective, not deficient. They presented a lot of other parts to their defense. There was no confusion on that topic. I think it was very clear who the state officials were and who the federal officials were. And I'll go back again. They wrote down the names of four different federal officers in their handwriting. It's very clear who the federal officers were. It's also very clear that the anticipated hit team was not real. There was never a chance it was going to materialize and appear and go after Mr. Cox. The government never contended that it was real. And so there was just no dispute in the trial that the federal hit team that they anticipated would never materialize. It was also undisputed a trial that the four federal names on the hit list, in the hit list database, those were not contested either. So the facts were just very clear. So there's really no chance here of the jury becoming confused on these questions. As far as the prejudice angle, we think the evidence was overwhelming. Even if you take out the KJNP evidence, just the database hit list in and of itself is powerful, unambiguous evidence of their intent to murder a federal officer. The two-for-one philosophy of killing two officers or arresting two officers for every one that was killed or arrested is powerful evidence. The fact that they amassed this armory of military-type weaponry, including hand grenades, explosives, and so forth, these assault rifles, anti-personnel weapons and ammunition and so forth, powerful evidence. And if you include the KJNP evidence, their willingness to organize, plan, collect themselves, associate with one another, all to go out under certain conditions, well-armed, and protect Mr. Cox, even if that was a little bit off base, still was such a threat and so alarming that it required intervention. One of the constructs of conspiracy law is to intervene when an agreement or an intent forms sufficient enough that it's a threat. In this case, why wait for Mr. Cox and his militiamen to kill a federal officer when it was obvious that they were conspiring to do so? And law enforcement was able to intervene ahead of time and prosecutors were able to prosecute ahead of time and not wait for a federal officer to be killed by Mr. Cox or his men. Those are my comments before the court. Unless there are any questions, I'll yield the rest of my time to the bench. Thank you. Thanks, Judge. Thank you, Your Honor. First, FIOLA is cited in both the conspiracy decision from the prior appeal and the solicitation conviction. So it's very evident the panel was using the FIOLA test against two different theories. They were testing it against KJ&P for solicitation and they were testing it against some other theory for conspiracy. And if you look at the briefing, when they say defendants and his co-conspirators agreed to attack government officials in the event certain conditions they subjectively thought were likely to occur, that briefing about contingent conspiracy likelihood to occur was about the database theory. So absolutely they were upholding it based on the database theory and nothing else. Number two, did the co-conspirators seek the database during these end events? Absolutely not. The informant wanted the database. The informant wanted the database because his handler told him to go get it. So he was asking everybody, oh, can I get the database? Let me go get the database. And when they went to Anderson to try to get it, Anderson wouldn't give it to them. So that's evidence that there was no agreement to use the database. Number three, the hit list. This was not referring to the database. The hit list about the federal marshal was Cox and Anderson discussing a separate scenario where Cox was trying to figure out who these fictitious FBI agents or federal marshals were who were after him. So when Marshall wrote down hit list, it was because they thought there was a hit team out to get Cox and they were trying to figure out who it was. And the idea was, oh, go to the marshal's office in Fairbanks or Anchorage, I can't remember which, and try to find out who those federal marshals might be. And so he looked up this guy, Jimmy Johnson. But that was not part of the agreement. It was not part of the database. It was a completely different theory and a completely different use. It was actually a self-defense idea because it was about the assassins. Number four, read the closing arguments. Each of these counsel were saying this is a conspiracy to kill the FBI agents at KJ&P. All of the defense counsel said that. The government said that. It is absolutely, it's blowing my mind that the government is coming up here and telling you that they were mostly talking about the database or there wasn't any idea that this was about KJ&P. The closing arguments are entirely clear that everyone was thinking about KJ&P because those people were supposedly federal. The people in the database were state employees. And the federal people, which don't include Jimmy Johnson, so there's only three of them, were never added to the database. And Anderson specifically said that he did not think Cox had agreed to murder them. A new trial is necessary either on the due process, Gates' argument, or on ineffective assistance of counsel. Thank you very much. Thank you, counsel. That case should be submitted.
judges: McKEOWN, GOULD, THOMAS